# Chicago, Milwaukee & St. Paul Railway Company v. Patrick Walsh.

1. RAILROAD COMPANIES—*Negligence in Complying with Ordinances.*
—A brakeman standing on top of the rear car of a backing freight
train, carrying a lighted lantern, is not a compliance with an ordinance
providing that if a train be backing, it shall have a conspicuous light on
the rear car, so as to show in the direction the car is moving.

2. SAME—*Care in Moving Trains by Night.*—A train that is backing
up in the night time and crossing a highway on one track at the same
time another train is crossing the same highway on another track, both
trains moving in the same direction, should exercise great care to give
such signals of its approach as will warn travelers on the highway.

3. REMITTITUR—*Entered in the Appellate Court.*—In this court a re-
mittitur was entered for $13,583.33⅓ from the judgment appealed from.

**Memorandum.**—Action for personal injuries. In the Circuit Court of
Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Decla-
ration in case; plea of not guilty; trial by jury; verdict and judgment
for plaintiff; appeal by defendant. Heard in this court at the October
term, 1894, and affirmed. Opinion filed February 12, 1895.

EDWIN WALKER, attorney for appellant.

WALKER, JUDD & HAWLEY, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

From a judgment recovered by the appellee for injuries
received by him by being run over by a freight train at the
crossing of Chicago avenue by the railroad tracks of appel-
lant, this appeal is prosecuted.

The accident occurred at about a quarter before six o'clock
on the morning of December 20, 1890, which was more than
one and a half hours before sunrise, and the weather was
misty and foggy. The permanent injuries to the appellee,
about which there can be no mistake, are the loss of his left
arm from a little above the elbow, and the loss of the mid-
dle, ring and little fingers, and the coresponding portion of
the palm back to the wrist, of his right hand, nothing re-
maining of that hand except the index or fore finger and

thumb, and their usefulness is so impaired that the tips of them can not be brought together to pick up or grasp anything, and their strength is much lessened.

The appellee was a plumber's helper by trade or occupation, earning an average of about fifteen dollars per week, and was thirty-three years old at the time of the injury.

On the morning in question he left his home in the northwestern part of the city of Chicago to go to his work, and for that purpose had occasion to cross appellant's railroad tracks at their intersection with Chicago avenue.

At that point there were two main tracks and two side tracks. Chicago avenue runs east and west and the railroad tracks cross it in a southeasterly and northwesterly direction. The southerly main track was used for incoming trains and the northerly one for outgoing trains.

When the appellee arrived at the railroad crossing, an incoming cattle-train of twenty-four cars was passing on the southerly main track, and he stopped between the two main tracks for it to pass. When he entered upon the tracks he looked both ways, and besides seeing the train that was passing he saw what appeared to him to be some stationary freight cars standing to the northwest of him on the side track. What he, in fact, saw standing there, was a train of seven cars that had been run out from the south side of the Western avenue yards and switched across the southerly main track onto the northerly main track, in order to be backed up on the last named track into the north side of the said yards.

That train was then standing about 450 feet northwesterly from the center of Chicago avenue, on the northerly main track, with its rear end toward Chicago avenue, waiting for a signal to back up across Chicago avenue, and into the north side of the yards.

The appellee testified that these standing cars appeared to him in the mist and dark to be standing on the side track on the northerly side of the main tracks; that there was no visible light on them and that he then walked across the side track and stepped between the two main tracks where he

thought he was out of danger; that there standing, facing the passing train, and with his back to the northerly track, the next thing he knew was that he was struck in the back by a train moving southwesterly on the northerly track, knocked down and so rolled over, that his arm and hand were run over, with the result already mentioned.

There seems to be no doubt but that the cars that struck appellee were the same that he had obscurely seen and supposed were stationary.

The locomotive that propelled those seven cars was at their westerly end, and in the dark of the morning might not have been visible from where appellee stood. He testified that he did not see it or hear it, and the presumption from all the evidence is that he did not see it and could not have seen it.

It is probable, also, that at the time when appellee saw the cars in the distance they were in fact standing still. It is clear that they crossed over to the northerly main track from the southerly side track just in advance of the incoming train which stopped the appellee, and that after they got upon the northerly main track they waited for a signal before backing up, and it seems probable, taking time into account, that they were so waiting when appellee saw them. Appellant's counsel in his brief states that, " the evidence shows that the engine of this (incoming) train reached Chicago avenue about the time the switching train commenced to back."

The appellee testified that he had no warning of the approach of the switching train, that he heard no bell, and that he saw no light. There is evidence tending to show that the bell was rung, and that a brakeman stood on top of the forward car with a lighted lantern, continuously from the time the switching train began to back up until it crossed Chicago avenue and reached the Western avenue yards.

Even though the bell were rung it is quite probable that it would not be heard by the appellee, owing to the noise of the passing train and that it was on the further end of a train of seven cars. That it was dark and the weather misty

and foggy is not disputed. An ordinance of the city of Chicago provides as follows:

"Every locomotive engine, railroad car or train of cars running in the night time on any railroad track in said city shall have and keep, while so running, a brilliant and conspicuous light on the forward end of such locomotive engine, car or train of cars; if such engine or train be backing, it shall have a conspicuous light on the rear car or engine, so as to show in the direction said car is moving."

One of the counts of the appellee's declaration charges specifically, the omission of a proper light on the rear end of the train, as negligence by appellant.

The evidence tending to show that there was a light on the front end of the train consists alone in the testimony of witnesses who, at a distance, saw the lantern swung by way of signal.

Assuming, however, that, as the evidence tends to show, a brakeman stood upon the top of the rear car, which was ahead as the train backed, carrying a lighted lantern, we do not think that such fact constituted a compliance with the ordinance. The lantern that the brakeman, if there, carried, was the ordinary lantern carried by trainmen, and might or might not have been visible to any one upon the track, depending upon the manner in which it was held and upon whether the body of the brakeman, or other object, intervened.

The requirement of the ordinance is that the light shall be conspicuous and "show in the direction said car is moving." We do not think a mere hand lantern, held by a person standing upon the top of a car, and subject to every change of position by him, satisfies the ordinance at a time when a train is moving over public highways. C. & N. W. Ry. Co. v. Trayes, 33 Ill. App. 307.

That the light, if any, from the lantern, was not effectual, is shown by the fact that the appellee's attention was not attracted by it as the train approached, and that no one on the switching train saw the appellee or knew that he was hurt, until informed by a switchman further down the track,

who had been told of the accident by a brakeman on the passing cattle train, who saw it.

The brakeman, who it is claimed was carrying the lantern, was not called as a witness, although he was identified as present in the court room during the trial, by the engineer of the switching train, a witness for the appellant.

We think, upon the whole case, that the jury were justified in finding, as they doubtless did, that there was a failure by appellant to comply with the ordinance concerning a light.

The appellee had a lawful right, being upon a highway, to receive due and timely warning of the approach of the switching train. He was chargeable with the duty of observing care, but his duty was no greater in degree than that of the appellant.

A train that is backing up in the night time and crossing a highway on one track at the same time that another train is crossing the same highway on another track, both trains moving in the same direction, should exercise very great care to give such signals of its approach as will warn travelers on the highway. C., R. I. & P. Ry. Co. v. Sharp, 63 Fed. Rep. 532.

The appellee, when entering upon the railroad tracks, looked both ways, and except the passing train, saw only what he had reason to believe were stationary cars, and the cars that he did see were, probably, at that moment standing still, waiting for a signal to back up. He was obliged to stop for the train that was passing to get across the highway that he was traveling, and under the circumstances had the right to stop where he did. He stopped at a safe distance from the train that was passing in front of him and for the switching train to back down upon him without a light signal such as the law requires, affords ample ground for a recovery.

The verdict and judgment for $29,583.33⅓ was so large as to excite suspicion that the recovery was for more than the compensation that alone the law permits. But in our opinion that matter has been cured by a remittitur entered

in this court on the motion of appellee, of $13,583.33⅓ from the judgment.

So reduced, the judgment is for no more than compensation.

We discover no error of law in the record, and will, therefore, affirm the judgment for the sum to which it has been reduced.