# Chicago & North Western Railway Co. v. John Joseph Kane.

1. ORDINARY CARE — *When a Question for the Jury.* —Whether, under all the circumstances of this case, the plaintiff was exercising, at the time of the injury, the care that an ordinarily prudent man would have exercised, is a question on which reasonable, fair-minded men might fairly arrive at different conclusions, and was properly submitted to the jury.

2. MASTER AND SERVANT — *Risks Assumed by the Servant.*— Any number of instances of negligence of a master not amounting to a custom or mode of doing business will not cast upon the servant the risk of subsequent or other similar acts of negligence.    To accomplish this result there must be a custom known to the servant, or which by the exercise of ordinary care he should have known.

3. CONTRIBUTORY NEGLIGENCE—*Failure to Guard Against a Custom of Defendant to Disobey the Law.*—In an action against a railroad company for personal injuries, in which the negligence charged is a failure to ring a bell as required by a city ordinance, evidence that it was the custom of the company to disregard the ordinance, and that the plaintiff knew it, is admissible on the question of contributory negligence.

4. DAMAGES—*Trial Court Should Decide Whether they are Excessive.* —A trial judge is generally in a far better position than an Appellate Court to decide whether the damages awarded by a jury are excessive, and he should never leave this duty to be performed by an appellate tribunal.

5. SAME—*$20,000 Excessive Under the Circumstances of this Case.*— A verdict for $20,000, damages for the loss of an arm, in favor of a young man twenty years of age, who was earning $1 per day at the time of the accident, and who afterward secured employment at $35 per month, is excessive, and should not be allowed to stand.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded. Opinion filed July 26, 1897.

A. W. PULVER, attorney for appellant; E. E. OSBORNE and L. W. BOWERS, of counsel.

CASE & HOGAN, attorneys for appellee; SIMEON P. SHOPE, of counsel.

Mr. Justice Windes delivered the opinion of the Court.

This case has been tried twice, the first trial resulting in a judgment for $10,000, which was reversed, this court holding that the law would not permit a recovery under the evidence in that trial. (50 Ill. App. 100.) The second trial resulted in a judgment for appellee of $20,000, the trial court holding, however, that the verdict was too large, but stating that it would require a remittitur if it were not for the fact that this court (as heretofore constituted), had taken upon itself the power to make remittiturs from judgments which it believed to be excessive, and therefore declined to interfere with the amount of the verdict.

The declaration under which the first trial was had charged appellant with negligence in kicking a freight car through its switching yard where appellee was at work, without any one being on it to warn appellee of its approach, and also without giving appellee any warning whatever to look out for its approach.

Before the second trial appellee filed two additional counts, the first of which set up two rules of appellant, providing for a man being on the car or ahead of it when pushed ahead or backed by an engine, or in case of a flying switch being made, to see that the way was clear and to give signals, and alleged that appellee was injured by reason of a failure to comply with these rules; the second count set up a city ordinance, requiring the bells of engines to be rung continuously while running in the city, and alleged that appellee was injured by reason of a failure to ring bell so as to warn appellee of the approach of the car which struck him.

The two additional counts merely re-stated more specifically the several charges of negligence in the original declaration.

The proof shows that appellee, at the date of the accident, which occurred about 10 A. M., November 22, 1890, was between nineteen and twenty years of age; had been employed for ten days before the injury by appellant, and was at work in its switch yard, which was over one-half a

mile long and contained more than forty tracks; no streets crossing it; that from three to six engines were constantly employed in switching cars in the yard, and some 600 cars were switched per day; that appellee's duty was to pick up and distribute throughout the yard, where they could be used, the links and pins necessary to couple together cars into trains, and in doing this he was obliged to go all over the yard every day from seven A. M. until dark; that he used a wheelbarrow to carry the links and pins about the yard and distributed them from that; that no bells were rung or whistles sounded by the engines engaged in switching, unless in case of danger; that it was not customary to have a man on top of cars that were kicked or switched alone through the yard, though that was sometimes done; that at the time of the accident appellee was engaged at his work in picking up links and pins about 400 feet east from the west end of track No. 15, where it connected with a lead track, and while so engaged on track 15, with his back to the west, and as he came out from the track where he was at work, a car coming from the west on track 15, and which was not attached to an engine, but had been kicked or pushed in from a lead track and uncoupled from the engine some 300 feet away from this point, ran against him, without his seeing it or hearing any warning of its approach, and caught his right arm between the moving car and another stationary car on the track in front of which he was picking up the links and pins. Appellee did not look for moving cars immediately preceding the accident. The last time he looked west along track 15 it was clear.

His arm was so crushed that amputation of it near the shoulder was performed. No one was on the moving car, and neither the bell or whistle of the engine, which had been attached to the car, and which, at the time of the accident was some three hundred or four hundred feet away, was rung or blown just previous to the time the car was separated from the engine, nor while the car moved through the yard toward the place of the accident, nor was any warning whatever given to appellee. The car that

caused the injury went in on track 15 at the rate of four or five miles an hour, and at the time it struck appellee was moving at about the same rate. This movement of cars is designated by some of the witnesses as a "kicking switch" —by others, a "flying switch," but the weight of evidence is that it is called by railroad men a "kicking switch" or simply "switching."

No serious ill has resulted to appellee from his injury, except the deprivation of his right arm, and from which he no doubt suffered great pain for a time. He left school at twelve years of age, and prior to his injury had worked at paper hanging, for which he received $1 per day. After his injury he was idle two or two and one-half years, and since has worked as a flagman, receiving $35 per month.

Appellant's first and second contentions are that appellee did not use ordinary care, and that he assumed the risks of the danger of switching cars in its yard.

It is true, no doubt, that had appellee looked for moving cars a few seconds before he was hurt, he would have escaped injury, but he says that he did look before he went onto the track and saw that it was clear, and being engaged at his work, more time elapsed after he looked than he thought; also it appears that a man was at times placed on moving cars. It was a question of fact whether, under all the surroundings, appellee was exercising the care that an ordinarily prudent and careful man would have done. This is a question on which reasonable, fair-minded men may fairly arrive at different conclusions, and was properly submitted to the jury. Terre Haute & I. R. R. Co. v. Voelker, 129 Ill. 541–50; Chicago & N. W. Ry. Co. v. Dunleavy, Id. 141; C., C., C. & St. L. Ry. Co. v. Baddeley, 150 Ill. 333; St. Louis, A. & T. H. R. R. Co. v. Eggmann, 161 Ill. 160; Lake Shore & M. S. Ry. Co. v. O'Connor, 115 Ill. 254–62.

That two juries have found that appellee used ordinary care, is not without weight in considering this question.

It is also true that the switch yard was a dangerous place to work, and while it appears that it was not customary to have men on cars when being switched, appellee had only

worked there but a short time, and had seen men on cars
which were being switched, and it does not appear that he
was aware of a custom in the yard which was in violation
of the rules of the company, nor does the evidence show so
clearly as to make it a question of law for the court, that
by the exercise of ordinary care he should have known.
Any number of instances, not amounting to a custom or
mode of doing business, of negligence of the master, will
not cast upon the servant the risk of subsequent or other
similar acts of negligence.  There must be a custom known
to the servant, or which by ordinary care he should have
known.  In any event the question as to whether appellee,
in the exercise of ordinary care, should have known the
custom of moving cars in the yard, under the evidence in
this record, should have been submitted to the jury.  Sher-
man v. Ry. Co., 34 Minn. 259; Bengtson v. Ry. Co., 47 Minn.
486; Abbott v. McCadden, 81 Wis. 563.

The cases cited by appellant as to assumed risks, are all
cases where the servant had actual knowledge of the dan-
ger to which he was exposed, or by the exercise of ordinary
care, should have had knowledge.

The trial court refused to allow appellant to show, by a
cross-examination of two of appellee's witnesses, whether or
not it was a custom at and prior to the accident, when
switching cars to ring the bell of the engine every time it
moved in the yard, and that it was known—the court hold-
ing in substance, that a custom can not be shown which vio-
lates an ordinance.  As before stated, appellee had offered
and the court had received in evidence an ordinance of the
city of Chicago which required the engine bell to be rung
continually while running within the city, and the evidence
shows no bell was rung at and prior to the accident.

The ruling of the court was erroneous in this regard.
Bengtson v. Ry. Co., 47 Minn. 486; Abbott v. McCadden,
81 Wis. 563.

In the Bengtson case, the court says:  " Conceding that
proof that the engine and tender were running at a greater
rate of speed than that allowed by the ordinance, was evi-
dence of negligence on the part of the defendant, yet if

running trains in the yard at a greater rate of speed than four miles per hour was the defendant's mode of transacting its business, and that and the risks to which it subjected him were known to deceased while in its employment, he assumed the risks."

In the Abbott case, *supra*, the defense offered to prove that it was the universal custom in the yard, before and at the time of the accident, to run switch engines, in doing the yard work, much faster than six miles per hour (that rate being the limit fixed by ordinance), and that the deceased well knew it. The court said: "While the custom of running switch engines at an illegal or dangerous rate of speed is no defense, it is quite apparent that, if the deceased knew that the engines in the yard constantly were operated at such a rate of speed, and chose without objection to remain in his employment, it was entirely competent to prove the two facts, as bearing on the extent of the risk which the deceased voluntarily assumed."

The fact that appellant was allowed to prove by its witnessess the custom in question, does not avoid the error nor the probable effect of the court's ruling on the jury.

The only remaining matter for consideration is the amount of damages. While this court might be entirely justified, in view of the statements of the trial judge, in holding that the damages awarded are excessive, we prefer to decide that point on the evidence in the record. It seems proper, however, to say that the reason given by the trial judge, stated heretofore, for not requiring a remittitur, is wholly insufficient. The trial judge should never leave his duty to be performed by an appellate tribunal. He is generally in far better position than an Appellate Court to pass upon the question of the amount of damages.

The matters stated above as to the nature of appellee's injuries, his earning capacity, education and station in life, make it fully apparent that $20,000 is a grossly excessive judgment, which should not have been entered by the trial court.

For the errors above noted the judgment will be reversed and the cause remanded.