## John F. Devine, Administrator, Appellee, v. Chicago & Alton Railroad Company, Appellant.

## Gen. No. 16,517.

1. Master and servant—*when question of assumed risk one of fact.* *Held,* under the evidence, that the question as to whether the plaintiff's intestate, a car repairer, assumed the risk of being struck by a train as one of the ordinary risks incident to his employment, was a question of fact to be determined by the jury.

2. Contributory negligence—*car repairer struck by train.* *Held,* under the evidence, that it was a question of fact for the jury to decide as to whether the plaintiff's intestate, a car repairer, was guilty of contributory negligence in not being constantly on the lookout for approaching trains.

Action in case. Appeal from the Superior Court of Cook county; the Hon. William H. McSurely, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed May 9, 1912. *Certiorari* denied by Supreme Court (Making opinion final).

Winston, Payne, Strawn & Shaw, for appellant; Silas H. Strawn, Edward W. Everett and J. Sidney Condit, of counsel.

R. Wilson More and Frank L. Childs, for appellee; Ode L. Rankin, of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

This is an action for damages for personal injuries, resulting in death, brought in the Superior Court of Cook county, by John F. Devine, administrator of the estate of Leonardo Storto, deceased, appellee, against Chicago & Alton Railroad Company, a corporation, appellant and hereinafter referred to as defendant. The jury returned a verdict for $3000 against defendant, and the judgment followed, from which judgment this appeal was taken. The accident occurred on the morn-

Devine v. C. & A. R. Co., 170 Ill. App. 218.

ing of February 4, 1908, and was caused by deceased being struck, run over and fatally injured by an engine of the defendant while deceased was working as a track repairer on the tracks of defendant.

The declaration consisted of three counts. The first count charged that while the deceased was repairing the tracks of the defendant, by the direction of defendant's foreman, defendant negligently drove its engine and train over deceased and negligently failed to blow a whistle, ring a bell or give any warning of the approach of said engine and train. The second count charged that said engine was running in a backward direction, that it was defendant's duty to have someone stationed on the back end of said engine or some place on said engine to keep a lookout for persons who might be lawfully upon said track and to give notice, by means of a bell, whistle or other means of warning, of the approach of said engine, and that defendant negligently failed to have any guard upon said engine and failed to give any such warning. The third count charged that, while deceased was working on said track and required to be in a stooping position and close to the ground, defendant negligently failed to keep a watch out for the approach of trains, knowing the dangerous condition in which the deceased then was, and failed to give any warning by means of a bell, whistle or other means, of the approach of said engine, coming in a backward direction, and in the opposite direction from which deceased was facing.

The deceased was forty-five years of age and had worked for defendant for four years prior to the accident, doing the same kind of work and in the same neighborhood. He was struck by defendant's engine while working at the northeast end of defendant's bridge over the south branch of the Chicago River, known as the "Bridgeport" bridge. The tracks crossing said bridge run northeast and southwest, are elevated twenty feet high, and from the bridge toward the

northeast run straight. Many trains cross the bridge each day. Sometimes trains pass every few minutes, and sometimes "after a long time." On the morning of the accident the deceased, his cousin Joseph Storto, George Diguardia and Salterelli, the foreman, started from the Halsted Street yards of defendant on a hand-car and went to their work. Diguardia commenced work about a block and one-half northeast of the bridge at tearing up boards with a pick, and the foreman put deceased and Joseph Storto at the work of tightening bolts on the south bound track immediately northeast of the bridge, which track is the northerly track of the two tracks crossing said bridge. The foreman told them to look out for trains, saying that he would be far away from them and could not "holler" to them, and he then went to work about 500 feet northeast of where they were. The deceased and his cousin were engaged in said work of tightening bolts at said place for about half an hour before the accident, and at the time of the accident had their faces toward the bridge. One or the other of them would occasionally,—every "two or three minutes,"—look up the track to the northeast to see if a train was approaching, but the testimony tends to show that for "two or three minutes" immediately prior to the accident neither of them had looked in that direction, and that there was nothing to prevent them seeing an approaching train three blocks away. The train, consisting of a switch engine (with its tender in front) and of eight or nine coaches, approached said bridge from the northeast on said south bound track. Before crossing the bridge the train stopped for a short period of time at a point about 700 feet northeast of said bridge, and upon a signal being given by a switch-tender for the train to move, the engineer gave "two short blasts, not very loud" of his whistle, as an answer to said signal of the switch-tender, and started the train. The engineer testified that he did not see the two men working at the

Devine v. C. & A. R. Co., 170 Ill. App. 218.

end of the bridge until he reached the place, that the
engine was backing, that he was on the right-hand side
of the engine, which was between the double tracks,
that in looking out of the cab window and around the
end of the tender he could see both rails of both tracks
about 150 feet from the front end of said tender, and
that the fireman of the engine, while the engine was
backing towards the bridge was engaged in the work of
"putting in fire." The engineer further testified that
he started the automatic bell ringer on the engine about
600 feet northeast of said bridge, that the bell on the
engine rang from then on to the bridge and that the
train was moving slowly; and he is corroborated by
said fireman. Diguardia testified that he did not hear
the bell on the engine ringing when the engine passed
him, nor did he hear the bell ring nor the whistle sound
subsequently. Salterelli, the foreman, testified that the
bell was not ringing when the engine passed him, that
he could not have heard the bell if it had rung during
any of the period while the train was running between
where he was and the bridge, and that he did not hear
any whistle sounded from the engine from the time the
answering signal to the switch-tender was given until
the engine reached the bridge  The testimony there-
fore as to whether or not any warning was given to de-
ceased of the approach of the train after it left said
point about 700 feet northeast of said bridge, is conflict-
ing. Joseph Storto, who was working alongside of de-
ceased, testified that when he first saw the train it was
about two and one-half feet from him, that he did not
hear any bell, or warning of any kind of its approach,
that he jumped out of the way of the train, that the
engine struck the deceased and moved him about sev-
enty feet from the place where they were working be-
fore the train stopped, and that the engineer took the
deceased out from underneath the engine and carried
him over to a nearby shed, where he soon died. The
testimony is also conflicting as to whether or not it was

the custom of engineers of defendant to ring the bells of engines approaching said bridge from the northeast when about to cross over the same. Furthermore, the evidence in this case raises the question, proper we think for the consideration of the jury in view of the particular work in which deceased and his co-worker were engaged at the time of the accident and their close proximity to said bridge, and in view of the open spaces between the stringers of the bridge, and in view of the possibility of the bridge being moved, as to whether or not, in the exercise of due care for their own safety, it was not necessary for the proper execution of their work for deceased and his co-worker both to be facing towards the bridge at and immediately prior to the time of the accident.

In urging this court to reverse the judgment of the trial court, it is first contended by counsel for defendant that the deceased assumed the risk of being struck by the train, as one of the ordinary risks incident to his employment as a track repairer. After a careful consideration of the evidence, and of many authorities cited by the respective counsel, we are of the opinion that this was a proper question for the jury to decide, under all the facts and circumstances in evidence.

It is secondly contended by counsel for defendant that the deceased was injured solely by his contributory negligence and his failure to exercise due care for his own safety, in not being constantly on the lookout for trains approaching said bridge from the northeast on said south bound track. We cannot agree with this contention, and are of the opinion that, under all the facts and circumstances of the case, this question was for the jury to pass upon. "The question of contributory negligence only becomes a question of law when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was such contributory negligence." Dukemann v. Cleveland, etc. Ry. Co., 237 Ill. 104, 106;

Chicago etc. Ry. Co. v. Kane, 70 Ill. App. 676, 679; Indiana, etc. R. R. Co. v. Otstot, 212 Ill. 429, 433. As it is said in Thompson on Negligence, section 1756:

"The position of track-walkers, track-repairers and especially that of car-repairers is materially different, in respect of the question of their contributory negligence, from that of ordinary travellers at highway crossings, and still more so from that of trespassers. They are not only lawfully upon the railway track and hence in a position of danger, but they are there under contract with the railway company for the performance of certain duties which require, to a greater or less extent, the exercise of their faculties, in the performance of which their faculties may become so absorbed as not to enable them to take the same care for their safety which might reasonably be expected from travellers at crossings and from intruders upon railway tracks or in railway yards. These considerations impose upon the railway company, with peculiar force, the duty of giving them warning upon the approach of a train or engine, by the use of audible signals; and by checking or stopping the train or engine in time to avoid injuring them, if the engineer perceives that, for any reason, they are not paying attention to those signals. As a general rule, it is not contributory negligence, as matter of law, for a person so employed not to be on a constant lookout for approaching trains."

The judgment of the Superior Court is affirmed.

*Affirmed.*

MR. JUSTICE McSURELY, having tried the case in the court below, took no part in this decision.