Albert T. Hughes, Administrator of Estate of John D. Copeland, Deceased, Appellee, v. Wabash Railroad Company, Appellant.

Gen. No. 9,679.

Opinion filed November 2, 1950. Petition for rehearing dismissed January 3, 1951. Released for publication January 3, 1951.

HENRY A. CONVERSE, MILES GRAY, and ELMER NAFZIGER, all of Springfield, for appellant; JOSEPH A. McCLAIN, JR., of St. Louis, Mo., of counsel.

MARK O. ROBERTS, of Springfield, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

This is an appeal by the defendant, Wabash Railroad Company, from a judgment of the circuit court of Sangamon county in favor of the plaintiff, Albert T. Hughes, administrator of the estate of John D. Copeland, deceased, in the amount of $12,000, in a suit for damages for the death of John D. Copeland from injuries sustained when the automobile which he was driving was struck by one of the defendant's trains.

The point most strenuously urged by the defendant for a reversal is that the evidence showed that the deceased was guilty of contributory negligence as a matter of law. Therefore it is most important that the facts be fully explored.

The deceased was driving in a southerly direction on Constant street in the Village of Dawson, Illinois, when he was struck by the defendant's westbound freight train at the crossing of Constant street and the defendant's railroad tracks at approximately 6:15 a. m. on September 3, 1947.

The evidence showed that the deceased had arisen in his customary manner; that he had slept fine during the night; that he had eaten his breakfast and was on his way to work at the time of the accident. He was in excellent health, his hearing was good and he was in good physical condition. His automobile had good tires and was in good working condition.

As deceased approached the railroad tracks his view to the left or east, the direction from which the train was approaching, was completely obstructed until he was within 15 to 16 feet of the north line of the main track, at which time, and for the first time, he then had a clear line of vision down the track to the east. From this must be deducted 11 feet to allow for the overhang

161

of the engine and the distance from the driver's seat in the automobile to the front of the car, which gives a distance of five feet. The objects which obstructed his view were:

(1) The grain office with the grain bins and grain elevator in the background to the east;

(2) Two sheds located immediately north of the house track and a few feet east of Constant street;

(3) Six boxcars parked on the house track extending from a point about the east edge of Constant street for a distance of 275 feet in an easterly direction along the house track and extending beyond the grain elevator located immediately north of the house track. In addition there were four boxcars parked on the house track to the west of Constant street;

(4) The railroad station which completely obstructed the view except as to that portion of the main track east of Constant street to the station building;

(5) A semaphore signal pole in front of the station bay window and the main track.

One witness for the plaintiff testified that the boxcars were so close to each side of the street that one could not pass an oncoming car—that there was not enough room for two Fords to go through. Another witness for plaintiff testified that the boxcars to the east were three or four feet over the road.

The evidence disclosed that when there were no boxcars on the house track to the east of Constant street, then the view to the east for cars driving south was open in back of the station and in front of the grain elevator.

There are three tracks at this crossing—the main track, a passing track and a house track.

The boxcars had been placed on the house track during the night preceding the accident.

There were no eyewitnesses to the accident.

The train was proceeding westerly toward Constant street at the rate of 50 miles per hour, which is 73 feet per second. The engineer could have seen the Constant street crossing if he was glancing down, but he was looking up. He did not see the deceased prior to the accident. The first he knew of the accident was when he felt a thud, and when he later saw the automobile, it looked like it had been hit between the driver's seat and the rear wheel on the left side.

The evidence is in dispute as to whether or not the train crew rang the bell or blew the whistle. Three witnesses for plaintiff testified that the bell was not rung and the whistle was not sounded. The evidence showed that they were in a position to hear if the bell had been rung or the whistle sounded. For the defendant, the members of the train crew and two other witnesses testified that the bell and whistle were sounded.

R. B. Thomas, a witness for the plaintiff, testified that the first time that any view was available to the driver of an automobile would be when he had a travel distance of 40 feet from the main line, and assuming that the automobile was being driven 15 miles an hour and the train 50 miles per hour a person would then have 1.8 seconds until the collision would occur. There was no objection by defendant to this testimony.

Mr. Thomas testified that he was assistant chief engineer for the Illinois Commerce Commission; that he was familiar with the crossing in question, and that in 1939, he had participated in a survey of all of the Wabash crossings between Springfield and Decatur. He testified that the elements taken into consideration by the experts on the question of unusually dangerous and extra hazardous crossings are: vehicular traffic and the speed of the same; the character and volume of railroad traffic and the speed of the same; the railroad facilities present at the crossing—that is the

163

track arrangement, the intersecting driveways and roadways, if any, the obstructions to the view including the fixed objects that obstruct a view, also the movable objects which may or may not obstruct a view; the character of the highway and the width of the crossing. He was also asked a hypothetical question which will be discussed in detail later. Numerous witnesses testified that the deceased was a careful man; never used intoxicants; tended to his own business; was a good driver; never took any chances; had never been in an accident before; was active and quick in his motions; had good eye-sight, good hearing and good health. At the time of his death he was 55 years old and earned from $350 to $380 per month.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law and that the judgment should be reversed and judgment entered here in favor of the defendant without remanding the case for a new trial.

■ It is an undisputed principle of law that when there are controverted issues of fact presented by the evidence upon which reasonable men may disagree, that the court must submit the case to the jury, and the verdict of the jury will not be set aside unless it is manifestly against the weight of the evidence.

■■ As previously stated, there was no eyewitness to the accident, and to show the exercise of due care on the part of the deceased, the plaintiff introduced testimony as to the careful habits of the deceased. Defendant contends that this is not sufficient evidence of due care, in view of the fact that when the deceased was 16 feet north of the north rail of the main track on which the train was approaching, he was in a position to have an unlimited view down the main track in the direction from which the train was approaching.

A similar contention was before the Appellate Court for the Second District in the case of *Karlock v. New*

164

*York Cent. R. Co.,* 333 Ill. App. 655. In that case it appeared that, from a point 75 feet west of the tracks the deceased had a clear view to the south, the direction from which the train was approaching, of 2000 feet. However, there was testimony that a semi-trailer truck which was parked along side the street blocked the defendant's view to the south until he was within 15 feet of the track. The court affirmed the judgment for the plaintiff, saying:

"In an action for personal injuries caused by negligence, plaintiff must prove that the injured party was in the exercise of due care for his own safety. Where, however, direct testimony of due care by an eye-witness is not available, the law, as a matter of necessity, permits that element to be inferred from the circumstances and from testimony of the careful habits of the deceased. (*Illinois Central R. R. Co. v. Nowicki,* 148 Ill. 29; *Stollery v. Cicero Street Ry. Co.,* 243 Ill. 290, 293.)"

and,

"It would serve no useful purpose to distinguish the cases cited by the defendant, and such an analysis would extend beyond the reasonable confines of a judicial opinion. It is sufficient to note, however, that in the cases where the court held as a matter of law that due care had not been proved and a verdict for defendant was directed, the view of the approaching train was unobstructed, or as in *Moudy v. New York Central Railroad Co.,* 385 Ill. 446, where the crossing was obscured, there was evidence that the plaintiff deliberately speeded up after he had seen the train."

The facts in the *Karlock* case seem to be on all fours with the facts here and we believe that this excellent opinion by Justice Bristow sets forth the law in Illinois today.

It seems to us that defendant is contending for the rule of law laid down in the case of *Baltimore & O. R.*

*Co. v. Goodman,* 275 U. S. 66, 72 L. Ed. 167, in which Mr. Justice Holmes stated that when a man goes upon a railroad track he knows that he goes to a place where he would be killed if a train comes upon him, and that he must stop, and when he cannot be sure whether a train is dangerously near, he must stop and get out of his vehicle.

As defendant well knows, this proposition was definitely rejected by the United States Supreme Court in the later case of *Pokora v. Wabash R. Co.,* 292 U. S. 98, 78 L. Ed. 1149, which involved a collision between a truck driven by the plaintiff when it was struck by one of the defendant's trains at a crossing in Springfield, and in which the court, in the opinion by Mr. Justice Cardozo, modified the rule in the *Goodman* case and stated that the majority of courts adopt the rule that the traveler must look and listen, *but that the existence of a duty to stop depends upon the circumstances and hence, generally, even if not invariably, upon the judgment of the jury* (italics ours), citing *Gills v. New York, C. & St. L. R. Co.,* 342 Ill. 455, and stating on page 105:

"Illustrations such as these bear witness to the need for caution in framing standards of behavior that amount to rules of law. . . . In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of the jury."

Numerous decisions are cited by the defendant in support of its position, but as stated in the *Karlock* case, in those cases where the court has held as a matter of law that due care had not been proved, and a verdict for defendant was directed, the view of the approaching train was unobstructed, or there was evidence that the plaintiff deliberately speeded up after he had seen the train.

It must be kept in mind that there were many obstructions at this crossing; that these boxcars were put on the house track during the night before the accident and were parked so close together that there was not room for two cars to pass each other between them.

Defendant contends that plaintiff is seeking a new rule of law when he bases his argument on the statements of the expert Thomas that the deceased had only 1.8 seconds from the time in which he could first see the train within which to stop. They maintain that it is solely a matter of distance and that if the deceased had a clear and unobstructed view of the track from a distance of 16 feet north of the track, then as a matter of law he must be held to be guilty of contributory negligence in driving across the track and being struck by the approaching train. As the witness Thomas stated, it is not purely a matter of feet. The deceased was not standing still, he was driving an automobile and in determining whether or not he was driving carefully we must consider the fact that he was moving and take into consideration his reaction time, which is a well recognized scientific test in the driving of an automobile. He was not under an absolute duty to stop but he might have driven across the track with care if it reasonably appeared he might have done so. Deceased's conduct did not amount to contributory negligence as a matter of law under these circumstances. It might be that if this court were members of the jury they would have found deceased guilty of contributory negligence; but that is not the question before the court, and we feel that the question of contributory negligence was a question for the jury.

A trial by jury is a constitutional right, and juries should decide disputed questions of fact. As stated by MR. JUSTICE CARDOZO, standards of behavior

should not be set down as matters of law, but should be questions for juries.

Further, it has always been recognized that in a case where there are no eyewitnesses, the showing of habits of due care on the part of the deceased, makes at least a prima facie case as to whether or not he was in the exercise of due care. Defendant is contending for a position under which it would be almost impossible for a plaintiff to recover where there are no eyewitnesses.

As stated in the case of *O'Brien v. Chicago & N. W. Ry. Co.*, 329 Ill. App. 382, the law requires only the highest proof of which the case is susceptible, and this has been the law in the State of Illinois since 1871.

It is just as reasonable to assume that the deceased was keeping a careful lookout and did apply his brakes when he was 15 feet away from the tracks, but was unable to stop his car in time, as it is to assume that he did not look. The reason for the accident may well have been because the defendant failed to sound its whistle or ring its bell as required by the statutes. If the defendant had rung its bell and sounded its whistle, the deceased would have had warning of the approach of the train even though he could not see it. These are all question for the jury.

Defendant contends that the witness Thomas was incompetent because he was an employee of the Commerce Commission.

■ The defendant calls attention to sections 58 and 56 of the Public Utilities Act [Ill. Rev. Stat. 1949, ch. 111 2/3, pars. 62 and 60; Jones Ill. Stats. Ann. 112.083 and 112.081]. It states that these sections provide that neither the report of accidents nor the recommendation nor the orders of the commission shall be admitted in evidence in any suit for damages arising from injury to property or for the loss of life. This is true under the specific provisions of section 56 which

has to do with the report of accidents. But section 58 gives the power to the commission to determine whether or not a crossing is extra hazardous and to order the installation of additional protective devices at such crossings. No reference is made in section 58 to prevent such orders from being admitted in evidence. We do not believe that there is any public policy of the State which prevents an employee of the commission from testifying as an expert.

Complaint is made of certain instructions given for the plaintiff, but in view of all the instructions given, said instructions are not objectionable.

█ Instruction No. 4 defined the issues, giving the substance of the complaint and answer. In its instructions, the defendant referred to negligence "as charged in the complaint." When such an instruction is given, as the one given here by the defendant, it is necessary to advise the jury what is charged in the complaint. *Goldberg v. Capitol Freight Lines*, 382 Ill. 283.

Objection was made to Instructions No. 14 and No. 26. The basis of the objection is that the deceased was not in the exercise of due care. We believe that we have sufficiently covered this point heretofore in this opinion.

█ Objection is also made to Instruction No. 24 which was an instruction in the language of the wrongful death statute. This is specifically approved in *Deming v. City of Chicago*, 321 Ill. 341, and we find no error in giving this instruction.

Defendant contends that the court erred in overruling its objection to the hypothetical question in which the witness Thomas was asked to express his opinion with reference to whether or not the crossing in the hypothetical question was an extra hazardous crossing.

The testimony of the witness has been previously set forth, but it might be well to be more specific with reference to the particular objection now raised. The

witness detailed the facts with reference to the crossing where the accident occurred. The witness then detailed the conditions which are usually taken into consideration by experts in determining whether a crossing is extra hazardous as heretofore stated. He was then asked a hypothetical question which included all the facts of the crossing involved in this case, and was asked then to express his opinion with reference to whether or not the crossing in the hypothetical question was an extra hazardous crossing.

Plaintiff contends that defendant did not properly object to the question, but we believe that a general objection was sufficient because the evidence was not competent on any grounds.

Furthermore at the conclusion of this witness' testimony counsel for the defense made the following motion:

''If the court please, we wish to renew our objection to all of the testimony of Mr. Thomas with reference to the extra hazardous crossing, and ask the testimony be stricken.''

Objection is made to the hypothetical question on the ground that it invades the province of the jury and that experts should not be allowed to give their opinions on questions which are the very questions to be determined by the jury.

Plaintiff relies on many quotations from Wigmore, but we believe that this does not express the law in Illinois as it is today, but rather what PROFESSOR WIGMORE would liked to have seen the law become.

██ Plaintiff contends that the defendant waived this point by cross-examining the witness on the issues as to the manner in which it is determined whether a crossing is merely hazardous or extra hazardous, and eliciting similar evidence from him on cross-examination. This point was not waived by the solicitation of such evidence. *Chicago City Ry. Co. v. Uhter,*

212 Ill. 174, and *Kane v. City of Chicago*, 392 Ill. 172; *Winn v. Christian County Coal Co.*, 156 Ill. App. 179.

The American Law Institute's *Model Code of Evidence* allows the expression of opinion by experts on ultimate issues; but in their exhaustive and scholarly work *"Opinion Evidence in Illinois"* Messrs. Willard L. King and Douglass Pillinger of the Chicago Bar, after four years of study in which they have examined more than 1800 Illinois decisions, found this doctrine to be opposed by many decisions of the Illinois courts.

The question asked the expert Thomas here was a hypothetical question, and so was not as objectionable as though he had expressed the opinion that the crossing in Dawson was extra hazardous, but nevertheless in view of the fact that the testimony with reference to the crossing was coupled with the hypothetical question could very easily have given the jury the impression that he was expressing his opinion that the Dawson crossing was extra hazardous.

Was it a question on the ultimate issue?

The complaint in this case charged that the defendant did one or more of the following acts:

a. Negligently and carelessly drove its locomotive;

b. Negligently and carelessly failed to keep a proper lookout;

c. Negligently and carelessly failed to ring the bell and sound the whistle;

d. Negligently and carelessly failed to install safety devices at this unusually dangerous and hazardous crossing;

e. Negligently and carelessly drove its locomotive at a dangerous rate of speed.

The defendant filed an answer denying these allegations of negligence. The ultimate issue was whether or not the defendant was negligent, and particularly whether it negligently and carelessly failed to install safety devices at this unusually dangerous and hazard-

ous crossing. This involved a question as to whether this was an unusually dangerous and hazardous crossing.

Defendant was not liable to protect the crossing with safety devices unless it was extra hazardous. With the witness expressing the opinion that he did, he usurped the function of the jury. In effect the witness said the defendant was negligent. There was nothing left for the jury to find on the liability question, and a verdict for the plaintiff followed automatically.

This testimony is analogous to testimony with reference to conditions being "safe" and "unsafe." All recent cases in the Supreme Court have held that an expert cannot use these words in expressing his opinion on the ultimate issue. The cases are collected and analyzed by King & Pillinger in *"Opinion Evidence in Illinois,"* pp. 50–54.

In *Keefe v. Armour & Co.,* 258 Ill. 28, in an opinion by MR. JUSTICE CARTWRIGHT, the Supreme Court held that it was error to permit a witness to express his opinion in response to a hypothetical question that the method adopted to repair a boiler, during which repair the plaintiff was injured, was unsafe.

The court stated at page 33:

"The question whether the method employed was reasonably safe was an ultimate fact in the case, to be determined by the jury as a conclusion from evidentiary facts. To permit the witness to give his opinion on the ultimate fact was to supplant the jury by a witness, and practically take from the defendant the right to a judgment of the jury as to the proper inferences to be drawn from the facts. Of course, the jury was entitled to the aid of experts in determining the existence or non-existence of facts not within the common knowledge from which a conclusion would arise whether the method was reasonably safe. It

172

was competent to prove that the conditions stated in the hypothetical question would be liable to form gases; that such gases would be explosive and would explode by ignition or at a certain temperature, as well as any other fact which would enable the jury to draw an inference as to the ultimate fact to be determined, but it is the rule of this court that an expert witness must not take the place of the jury and declare his belief as to the ultimate fact.''

This court followed the *Keefe* case, *supra,* in *Paisley v. American Zinc Co.,* 235 Ill. App. 22. In that case certain witnesses for the plaintiff testified that smoke and fumes from the defendant's smelter plant had caused the vegetation to die out on the property of the neighbors around the plant, and had caused the property to depreciate. This court reversed a judgment for the plaintiff, saying at page 30:

''In the opinion of this court it was usurping the functions of the jury for the witnesses in this case *to give their opinion as to the effect of any gases and fumes upon vegetation,* and to testify that the depreciation in the value of said property was caused by appellant's smelter.''

The *Keefe* case, *supra,* has been followed and cited in *Gillette v. City of Chicago,* 396 Ill. 619, and *People v. White,* 365 Ill. 499, and in many other decisions of the Supreme and Appellate Courts of this State.

The trial court erred in allowing the witness Thomas to express his opinion that the crossing in the hypothetical question was an extra hazardous crossing, and in our opinion this constitutes reversible error.

This cause is reversed and remanded for a new trial.

*Reversed and remanded.*