Lois L. Gibson, Administratrix of Estate of Howard Gibson, Deceased, and Lois L. Gibson, Individually, Plaintiffs-Appellees, v. William F. Nenne and Gulf, Mobile and Ohio Railroad Company, Defendants. Gulf, Mobile and Ohio Railroad Company, Appellant.

Gen. No. 9,914.

Opinion filed April 13, 1954. Released for publication April 29, 1954.

LIVINGSTON, MURPHY & BARGER, of Bloomington, for appellant.

COSTIGAN, WOLLRAB & YODER, of Bloomington, for appellees.

MR. JUSTICE HIBBS delivered the opinion of the court.

The plaintiffs-appellees, Lois L. Gibson, administratrix of the estate of Howard Gibson, Deceased, and Lois L. Gibson, individually, brought suit against the defendants, William F. Nenne and Gulf, Mobile & Ohio Railroad Company, to recover damages for the injuries to and resulting death of plaintiff's intestate and for funeral expenses paid by plaintiff, Lois L. Gibson, individually.

The jury found William F. Nenne, locomotive engineer, not guilty but returned a verdict in favor of the administratrix in the sum of $10,000 and in favor of Lois L. Gibson, individually, for $422.80 and judgments were duly entered on the verdicts. The railroad company, as appellant in this appeal, contends that the trial court erred in not directing a verdict for the defendant at the close of all the evidence and in refusing

to enter a judgment notwithstanding the verdict. No motion for new trial was made.

██ The appellant says that there was not sufficient proof either on the question of its negligence or on the due care of the decedent to warrant submitting the cause to the jury. The issues here raised present a question of law as to whether, upon a full consideration of all the evidence and all reasonable inferences from it most favorable to the appellees, there is a total failure or lack of evidence to prove negligence on the part of the appellant railroad and due care of plaintiff's intestate. (*Heideman v. Kelsey,* 414 Ill. 453; *Todd v. S. S. Kresge Co.,* 384 Ill. 524; *Merlo v. Public Service Co. of Northern Illinois,* 381 Ill. 300.)

The complaint alleged negligence on the part of the locomotive engineer, Nenne, in failing to give the statutory warning of the approach of the train by either ringing the bell or blowing a whistle and the operation of the train at an excessive rate of speed. In view of the fact that the engineer was found not guilty it is conceded in the briefs of both parties that the statutory warnings were given and the train was not operating at an excessive rate of speed. The complaint did charge a negligent failure on the part of the appellant to give other warnings of the approach of the train in addition to the statutory requirements.

The decedent, operating a truck in a westerly direction, loaded with limestone weighing 21,000 pounds, was struck and killed about eleven-thirty in the morning on January 22, 1952 at an intersection of a due east and west gravel road and the tracks of the appellant which ran in a straight northeasterly and southwesterly direction at an angle of twenty-five degrees east of north and twenty-five degrees west of south.

At the intersection there were three tracks, the west one or southbound main, the middle track or northbound main and the east track known as the business

track. It was ten feet, two inches from the west rail of the business track to the east rail of the northbound main and eight and one-half feet from the west rail of the latter track to the east rail of the southbound main. The distance from the most easterly rail to the most westerly rail was about twenty-six feet. There were no warning signs at the crossing other than the customary crossarm signals. Decedent was struck by a passenger train traveling south on the southbound main or westerly track.

The plant of the Ocoya Stone Company, a limestone mill, was located at the southeast corner of the intersection, and a grain elevator was situated about eighteen hundred feet north of the crossing on the east side of the right-of-way. The accident occurred during the busy season of the limestone company when about 125 loads of limestone passed over the crossing each eight-hour day.

A northbound freight train about thirteen hundred feet in length stopped on the north main or middle track about one-half hour before the accident and conducted switching operations at the elevator and limestone mill up until five to fifteen minutes before the southbound passenger train passed it. While the operation at the mill was being conducted, one of the brakemen flagged the crossing in question.

There were five eyewitnesses who testified for the plaintiff, all within a hundred or less feet of the scene of the accident. None of them heard any bell and no whistle except just immediately before the collision. They stated that the rear end of the freight train was fifty to one hundred twenty-five feet north of the crossing, that the southbound passenger train powered by a diesel locomotive was running between seventy and eighty-five miles per hour. Four of the witnesses were operating trucks loaded with limestone. One had just passed over the tracks. One was approaching the busi-

161

ness track. One was on the weighing scales about a hundred feet from the crossing, and the other was waiting just south of the scales to have his load weighed. The plaintiffs' evidence showed that the decedent, as he was crossing the tracks, was traveling about five miles per hour. Albert B. Anderson, one of the truckers, crossed the tracks immediately before the decedent. When he was in the middle of the northbound main his view was still obstructed by the freight train. It was not until he was in the middle of the southbound main that he could see the approaching passenger train then about a quarter of a mile away. At the time of the collision he was twenty feet west of the southbound main. He opened the door of his cab and looked behind and saw Gibson was coming across the tracks and stuck his arm out of the door and motioned a couple of times to stay back. He could see Gibson's head and face through the windshield. Gibson was looking to the north and then to the south and again back to the north and did not look ahead toward the witness.

The photographs in evidence show that if there had been no train or car standing on either the northbound main or the business track, a westbound traveler on the highway would have an unobstructed view to the north as he approached the appellant's tracks for over one-fourth of a mile.

The crew of the freight train knew that passenger train No. 11, the one involved in this case, was running twenty minutes late.

██ ██ One of the questions here presented is whether there was sufficient evidence to warrant a jury in passing upon the question of negligence arising from a common-law duty. This cause does not fall in the class of cases where there is an unobstructed view nor where there has been a failure to comply with the statutory warning requirements or a failure of mechanical signals or to lower gates. Under the circum-

stances, if there was no extra-hazardous condition existing at the crossing there would be no duty upon the railroad to operate safety devices or provide a watchman. If there was any evidence tending to show that an extra-hazardous condition existed at the crossing it was for the jury to determine whether the railroad should have provided additional warning to travelers upon the highway. (*Hughes v. Wabash Railroad Company*, 342 Ill. App. 159; *Maltby v. Chicago Great Western Ry. Co.*, 347 Ill. App. 441.)

This brings us to a consideration of whether a crossing not deemed ordinarily extra-hazardous, but becomes such temporarily by reason of the acts of the railroad, necessitated the giving of additional warning of approaching trains, so long as that condition continued. In *Applegate v. Chicago & N. W. Ry. Co.*, 334 Ill. App. 141, it is said at p. 153: "In the instant case, it would appear that even if the crossing were not deemed ordinarily extra hazardous, exceptional circumstances were created when the '401' passed defendant's freight train at this crossing at ninety miles an hour, and it might reasonably be concluded that ordinary prudence would require additional protection at that time."

In *Chicago, R. I. & G. Ry. Co. v. Zumwalt* (Texas), 239 S. W. 912, it is said at p. 916: "The standing freight train, together with the obstructions on and near the team track and the roaring of the wind and the dust and dirt blown thereby, all contributed to make it dangerous to pass over said crossing from the south at that particular time. The momentarily expected arrival of the passenger train was necessarily known to the employees of the plaintiff in error, but the traveling public will not be presumed to have known such fact . . . An especially dangerous situation was created by this combination of circumstances. The duty of plaintiff in error to exercise ordinary care to enable

the traveling public to pass over the crossing in safety was measured by the situation. Its duty to meet such a situation arose when the special hazard arose and continued while such hazard continued. It reached the crucial point just as the passenger train entered upon the crossing from behind the standing freight train. It was at this critical instant that defendant in error passed from behind the standing caboose onto the main line and a collision was then inevitable. There was evidence justifying the submission of the issue, and the verdict is not without evidence to support it."

It does not appear from the evidence that there was heavy traffic upon the east and west road but it did appear that the crossing was used extensively by truckers hauling heavy loads of limestone, that the tracks ran in a northeasterly and southwesterly direction, that there was only eight and one-half feet between the rails of the northbound and southbound main-line tracks, that the appellant left standing for one-half hour on the northbound main a freight train over one-quarter of a mile in length, the rear end of which was from fifty to one hundred twenty-five feet north of the crossing and that a westbound traveler could not see a southbound train on the west track unless he were almost on or on the southbound track. It further appears that the passenger train was running between seventy and eighty-five miles an hour or between 100 and 118 feet per second.

██ The crew of the freight train knew the passenger was running twenty minutes late and they recognized the dangerous condition by flagging the crossing while switching operations were conducted at the limestone mill. This hazardous condition was created by the appellant itself in that it left its freight train standing in the position testified to by the witnesses for the appellees for a half hour while the engine crew conducted switching operations. We think the question of whether

164

an extra-hazardous condition existed which required the railroad company to furnish additional precautions at the crossing to warn travelers of the approach of the southbound train was a question for the jury to determine.

It is further contended that the decedent was not in the exercise of due care. Including the decedent there were five truckers either in the act of going over or approaching the tracks and two about ready to pass over the crossing. None heard the bell nor any whistle until just before the accident. Even conceding, as the parties have, that the bell was ringing and the whistle blown, it could reasonably be urged that the warning signals were not effective. The decedent approached and was passing over the railroad tracks at a most moderate speed of five miles per hour. Albert B. Anderson testified that he had just crossed the tracks, saw the southbound passenger about a quarter of a mile away, opened the door of his cab and attempted to signal the decedent of the approach of the train. He saw Gibson turn his head to the north and then to the south and again to the north as he proceeded across the tracks, but that the latter did not look at him and did not see his signal.

It is true that it is the duty of a traveler to look and listen for an approaching train, and even though the view is obstructed by a passing train the traveler is under a duty to wait in a place of safety until the train has passed. However, this case presents a different situation. The freight train had been standing for one-half hour. There is evidence that the decedent was proceeding slowly, looking in both directions to ascertain if a train was coming. The signals either by bell or whistle were not heard by any of the other persons in the close vicinity or crossing or about to cross the tracks. We cannot say that there was no evidence on the due care of the decedent. There was suffi-

165

cient evidence of the due care of decedent to warrant the submission of that issue to the jury. (*Gills v. New York, C. & St. L. R. Co.*, 342 Ill. 455; Applegate v. *Chicago & N. W. Ry. Co.*, 334 Ill. App. 141.)

The trial court did not err in denying the motion for a directed verdict, or in refusing to enter judgment notwithstanding the verdict.

*Judgment affirmed.*