341 F.2d 732
 Ethel R. HALEY, Administratrix of the Estate of Harold Haley, Deceased, Plaintiff-Appellee,
v.
The BALTIMORE AND OHIO RAILROAD COMPANY, The Baltimore and Ohio Chicago Terminal Railroad Company, and Charles J. Rabidoux, Defendants-Appellants.
 No. 14701.
 United States Court of Appeals Seventh Circuit.
 February 9, 1965.
 Rehearing Denied March 10, 1965.
 
 John H. Gobel, N. E. Liontakis, Chicago, Ill., for appellant.
 Maurice R. Kraines, Theodore E. Zahler, Chicago, Ill., for appellee.
 Before DUFFY, SCHNACKENBERG, and KNOCH, Circuit Judges.
 KNOCH, Circuit Judge.
 
 
 1
 Plaintiff-appellee, Ethel R. Haley, administratrix of the estate of Harold Haley, brought action against the defendants-appellants, the Baltimore and Ohio Railroad Company, the Baltimore and Ohio Chicago Terminal Railroad Company, and Charles J. Rabidoux, engineer for the Baltimore and Ohio Railroad Company, charging them with negligence in the operation of a train at a crossing where a collision occurred on May 21, 1960, in which Harold Haley lost his life and in which the automobile he was driving was demolished.
 
 
 2
 Jurisdiction was based on diversity of citizenship. The jury brought in a verdict of guilty on a wrongful death count and assessed damages against the defendants in the amount of $22,500, and a verdict of not guilty as to the property damage. Judgment was entered pursuant to the jury's verdicts and this appeal followed.
 
 
 3
 The evidence showed that the deceased Harold Haley was a part-time taxi driver. On the day of the accident his employer allowed him to leave early. Shortly before 10:00 o'clock p. m., he drove off in his own automobile, a recently acquired Volkswagen. This automobile has been variously described as white, off-white, light gray, and nearly white with a blue tint. Mr. Haley's employer testified that both the automobile and its driver appeared normal to him and that the headlights of the Volkswagen were lighted.
 
 
 4
 The site of the accident was in Chicago Heights, Cook County, Illinois, at the intersection of Joe Orr Road, which runs east and west, and four railroad tracks running north and south, operated by the two railroad companies.
 
 
 5
 The crossing is protected by six standard cross-buck signs. Plaintiff makes a point of the fact that the embankment of the C. and E. I. Railway runs in a north-northeasterly and south-southwesterly direction some 355 feet west of the westernmost of the four tracks and partially blocks the view of an eastbound motorist, such as the decedent, as he proceeds easterly along Joe Orr Road. However, from a point 400 feet west of the third track, where the accident occurred, and looking southeast, the direction from which the locomotive was coming, there are no physical obstructions to seeing an engine for a distance of more than 1,000 feet. Plaintiff argues that this may be true in daylight but not at the time of the accident. It is clear however that there was no obstruction to a clear view of a lighted locomotive proceeding from that direction.
 
 
 6
 There was a factory, not in operation at the time of the accident, some 500 feet to the south, with a watchman's guardhouse about 550 feet from the crossing. The watchman, Carl Hopkins, was in his guardhouse with a clear view of the crossing and the approach to it.
 
 
 7
 Mr. Hopkins was an important witness in this case. He testified that he saw the locomotive, with its headlights shining, backing northward on the main track. He heard the bell and whistle. There was uncontroverted evidence that the engine had twin seal beam 200 watt headlights at the top of the engine shining in the direction in which it was moving. We cannot agree with the plaintiff that the mere fact that the engine was backing was significant. Unlike the situation in some of the cases cited by plaintiff (Chicago, M. & St. P. Ry. Co. v. Walsh, 57 Ill.App. 448; Chicago, R. I. & P. Ry. Co. v. Sharp, 8 Cir., 1894, 63 F. 532) defendants' engine was not pushing unlighted railway cars ahead of it. In addition to the headlights, the engine had two lantern lights, a footboard light and a smaller "number light". There was evidence that the bell rang continuously for a distance from at least 1320 feet up to the crossing itself, in addition to the blowing of the whistle.
 
 
 8
 There were some railway cars nearby but these were stationary in a location east of the main track where they could not under any circumstances obstruct the view. There were no automobiles in the factory parking lot.
 
 
 9
 Mr. Hopkins had a clear view of the road as well. He watched an automobile approaching which he testified was the automobile involved in the collision. He described it as not having headlights, proceeding at a speed of between 40 to 60 miles per hour. There was no posted speed limit on the road. He saw it from the time it passed the viaduct, more than 350 feet from the site of the accident. He said the car appeared dark or black. Plaintiff contends that this could not have been her decedent's automobile which was white or almost white in color with lighted headlights.
 
 
 10
 Although Joe Orr Road is not itself lighted, there were lights under the roof of the guardhouse which shone down and onto the parking lot and which reflected onto the road, on which Mr. Hopkins testified he would be able to see a man walking.
 
 
 11
 About 10:15 o'clock p. m., the decedent's Volkswagen eastbound on Joe Orr Road collided with defendants' moving northbound locomotive, striking the side of the locomotive. Edward John Bitten, a fireman on the locomotive, testified that the impact sounded like an explosion and that the locomotive engine which weighed 246,500 pounds, rocked over to the east. At the time of the impact, the engine was moving at a speed estimated by one witness as 15 to 20 miles per hour and by another witness at 10 to 15 miles per hour. The footstep flash plate and grab iron on the side of the engine were bent. As indicated, the Volkswagen was virtually demolished, and its driver was killed.
 
 
 12
 Plaintiff argues that the automobile which Mr. Hopkins saw must have been another automobile because he said that when he first saw it, it appeared dark or black. He also said that when he saw it after the accident it looked light gray in color and that it was the same automobile. He watched the approaching automobile and the moving locomotive but did not actually see the impact. He heard the commotion. He had also said in a prior deposition that his first thought was that the dark automobile had got by the train, until he heard the commotion. Plaintiff reasons that this must have been what happened: that the dark unlighted automobile must have cleared the track just ahead of the decedent's white, lighted Volkswagen which somehow escaped Mr. Hopkins' notice entirely.
 
 
 13
 Plaintiff argues that the decedent's automobile was lighted relying evidently on the testimony of the decedent's employer that the headlights were on when the decedent left him about 10:00 o'clock p. m., and the testimony of another witness who viewed a picture taken of the Volkswagen three days after the accident and who said that the light switch was pulled out or in the "on" position. Another witness who viewed the Volkswagen itself at the scene of the accident just after the impact testified that the light switches were pushed in or in the "off" position. There was also testimony to an extra unattached battery in the back seat from which an inference might be drawn that the battery in use was not functioning perfectly.
 
 
 14
 The appellants cite a number of alleged errors largely dealing with admission or exclusion of evidence and instructions. The major ground for appeal, however, lies in the Court's refusal to direct verdicts for the defendants at the close of the evidence or to enter judgments in their favor notwithstanding the verdicts.
 
 
 15
 Plaintiff alleged negligence on the part of the defendants in their failure to have gates, flasher signals, a flagman at the crossing; failure to signal by whistle, bell or waving of a lantern; excessive speed; failure to maintain a lookout and backing the locomotive at night without lights or an employee to give warning.
 
 
 16
 As indicated above, there was uncontroverted testimony, not only of the members of the train crew but of the independent witness, Mr. Hopkins, that there was no failure to give the statutory signals. The locomotive was lighted to show the direction in which it was moving; audible signals by bell and whistle were given; the locomotive was on a mainline movement, it was in the crossing prior to the Volkswagen and had the right of way, it was not using excessive speed.
 
 
 17
 Plaintiff argues that the lights of the moving locomotive would have been "lost" among the small stationary lights of the factory grounds, which seems to us most unlikely, and that the windows of the automobile may have been closed against the cold and muffled the sound of any signals. These possibilities would not show that defendants had been negligent. There was no evidence to controvert the statements of the train crew that they were maintaining proper lookout. Defendants contend that the Trial Court improperly excluded evidence of the spontaneous statements of the crew, such as "all clear," offered not to show the truth of those statements, but merely to show the fact of their having been made to support testimony that they were maintaining a lookout.
 
 
 18
 There was an absence of testimony to show that this crossing was extra hazardous or for other unusual reasons required the special protections listed in the complaint as lacking. Opp v. Pryor, 294 Ill. 538, 128 N.E. 580, 582 (1920); Gibson v. Nenne, 2 Ill.App.2d 158, 118 N.E.2d 788, 790 (1954); Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, 421, 12 S.Ct. 679, 684, 36 L.Ed. 485 (1892); Willett v. Baltimore & O. S. W. R. Co., 284 Ill.App. 307, 1 N.E.2d 748, 751 (1936). There was no evidence of dense population near the crossing, heavy train traffic or prior accidents. This was an ordinary conventional railroad crossing such as described in Spikings v. Wabash R. Co., 7 Cir., 1953, 201 F.2d 492, 497.
 
 
 19
 Defendants also contend that it was error to admit in evidence plaintiff's Exhibit 3, an application filed with the Illinois Commerce Commission on March 2, 1960, to change the grade crossing to include two automatic short arm gates with flashing light signals. This application was dated January 29, 1960, and included Chicago and Eastern Illinois Railroad Company, not a party to this case. The evidence indicates that this application was filed at the request of the County of Cook in connection with the widening of Joe Orr Road and sought approval for additional protection. Ultimately an order of the Illinois Commerce Commission issued for installation of automatic signals as of May 15, 1961, long after the accident here involved. Evidently the Illinois Commerce Commission saw no need for added protection pending installation of the new signals.
 
 
 20
 We agree with the defendants that this application cannot be construed as an admission of negligence by the defendants. Their cooperation with the County in its plans for developing the highway was not relevant to the issues of this cause.
 
 
 21
 The Trial Judge evidently decided that Mr. Hopkins' failure to observe the actual impact disqualified him as an eye witness although he did observe the Volkswagen and the locomotive for some time prior to and immediately after the impact and testified to all of the surrounding circumstances. Evidence was admitted as to the decedent's careful habits. Hawthorne v. N. Y. C. Railroad Co., 2 Ill.App.2d 338, 119 N.E.2d 516 (1954). We believe that the Trial Judge adopted too restrictive an interpretation of the term "eye witness." Mr. Hopkins saw and described the events from which the decedent's behavior and operation of his automobile might be inferred. Elliott v. Elgin, J. & E. Ry. Co., 325 Ill.App. 161, 59 N.E.2d 486, 494 (1945). The decedent's automobile was under observation by Mr. Hopkins at all material times preceding and up to the collision. Hawbaker v. Danner, 7 Cir., 1955, 226 F.2d 843, 849. Similarly, in the face of testimony that the Volkswagen approached the crossing without lights, decedent's employer was allowed to testify that the automobile driven by the decedent appeared to be in "A-1" condition.
 
 
 22
 It would needlessly lengthen this opinion to list and comment on all the points raised and authorities cited to which we have given our attention and consideration.
 
 
 23
 As Chief Judge Hastings of this Court stated in a recent opinion, Lappin v. Baltimore & Ohio Railroad Company, 7 Cir., 1964, 337 F.2d 399, 401-402:
 
 
 24
 "Simply stated, this appeal is primarily concerned with the fundamental question of whether under the facts before us, as shown by the record, there was a case of liability properly made out to warrant submission to the jury for its determination."
 
 
 25
 and
 
 
 26
 "In determining whether the evidence justified submission of the case to the jury * * * we must look to all the evidence in the record, together with all reasonable inferences to be drawn therefrom. Where such evidence and inferences, when viewed in the light most favorable to the party opposing a motion for directed verdict or judgment n. o. v., are such that reasonable men in a fair and impartial exercise of their judgment, applying applicable substantive law, may reach different conclusions, such motions should be denied. [citing cases]"
 
 
 27
 Construing the evidence in the light most favorable to the plaintiff, we must conclude that as a matter of law the defendants were not negligent and that there was no issue here for the jury.
 
 
 28
 The judgment is reversed and the cause is remanded to the District Court to vacate that judgment and to enter judgment for the defendants.
 
 
 29
 Reversed and remanded.