Robert H. Baker, Administrator of the Estate of Dixie Baker, Deceased, Robert H. Baker, Administrator of the Estate of Robin Baker, Deceased, Deborah Baker, a Minor, by Robert H. Baker, Her Father and Next Friend, and Robert H. Baker, Plaintiffs-Appellees, v. Norfolk & Western Railway Company, a Corporation, Robert L. Wetz, Sr., and Burton Jones, Defendants-Appellants.

Gen. No. 68–130.

Fifth District.

March 17, 1970.

Pope & Driemeyer, of East St. Louis, for appellant.

Chapman, Strawn & Kinder, of Granite City, for appellees.

MORAN, P. J.

This action was brought to recover damages occasioned by the alleged negligence and/or willful and wanton misconduct of defendant-appellant, Norfolk and Western Railway Company, a corporation, defendant, Robert L. Wetz, Sr., the engineer of the train in question, and defendant, Burton Jones, the fireman of the train in question, in the operation of a passenger train at a grade crossing. Defendant's, Burton Jones, motion for a directed verdict was granted at the conclusion of plaintiffs' case. The jury rendered a verdict in favor of defendant, Robert L. Wetz, Sr., and against all plaintiffs on all counts of plaintiffs' complaint directed against that defendant. The jury rendered verdicts for each plaintiff only on the counts of the complaint alleging negligence against defendant-appellant, upon which the court entered judgments and from which this appeal is taken.

Defendant-appellant's motion for judgment notwithstanding the verdict, directed to plaintiff, Deborah Baker and Robert H. Baker, her father and next friend, was denied, but the court ordered a new trial in the case of Deborah Baker, by her father and next friend, Robert H. Baker, against defendant-appellant on the issue of damages only. Deborah Baker has filed a petition for leave to appeal from that order.

Plaintiffs' complaint alleged that defendant-appellant was negligent, among other things, in that "it failed to provide flares, lights, bells or gates at said crossing." The jury was subsequently instructed in the language of that allegation.

This accident occurred a short distance north of Granite City, Illinois, on March 8, 1966, at about 7:05 p. m., at the intersection of defendant's main northbound track and Maryville Road when a car being driven by Dixie Baker in a northerly direction on Maryville Road over said crossing was struck by a northeastbound passenger train owned and operated by the defendant, Norfolk and Western Railway Company. The track in question runs in a northeast south-southwest direction and Maryville Road runs in a generally north-south direction. The grade crossing in question consists of two tracks, one being the defendant's northbound main track and one being the defendant's southbound main track. The protection afforded at the grade crossing in question was the standard crossbuck signs, saying, "Railroad Crossing." Some 89 feet west of the grade crossing in question is another grade crossing consisting of two tracks used by the New York Central Railroad Company and the Gulf, Mobile and Ohio Railway Company which grade crossing is also protected by the standard crossbuck signs, saying, "Railroad Crossing."

Plaintiffs and plaintiffs' decedents lived approximately six-tenths of a mile south of the grade crossing near

Granite City and had lived at this location for five years, during which time Dixie Baker, deceased, the driver of the automobile in question, drove over the crossing in question about once a week. At the time of the accident it was dark and clear.

When the deceased, Dixie Baker, left home, she was driving a 1966 Chevrolet. The plaintiff, Deborah Baker, fourteen years of age at the time of the accident, was seated in the right-hand front seat. The deceased, Robin Baker, nine years of age at the time of the accident, was seated in the rear seat of the car on the left-hand side behind her mother, Dixie Baker.

No one knows what route Dixie Baker, deceased, followed to get to the grade crossing in question since Dixie Baker and Robin Baker were killed as the result of the accident, and Deborah Baker suffered retrograde amnesia. However, Dixie Baker would normally go north on Vincent Street a few hundred feet, then turn left on Binney Street to Route 203 and then turn right onto Route 203 and go in a northerly direction on Route 203 to Maryville Road and then turn left onto Maryville Road, going in a northerly direction up to the grade crossing in question.

Route 203 runs parallel with and East of the northbound main track of defendant. The distance between the most westerly edge of Route 203 and the most easterly track of the northbound main track of defendant, the track that the train in question was on at the time of the accident and the first track that Dixie Baker, deceased, would have come to, measured on Maryville Road, was 126 feet.

The accident occurred a few minutes after Dixie Baker, deceased, Robin Baker, deceased, and Deborah Baker left their home. The only witness that saw plaintiffs' automobile after it left home was the engineer of the train, Robert L. Wetz, Sr., who saw the automobile just in the last split second and just as the automobile was going

across the track in front of the train. The point of impact to the automobile was to the left rear fender, six feet from the rear end of the car.

Plaintiffs' decedents, Dixie Baker and Robin Baker, died as a result of the accident. Dixie Baker was 32 years of age and Robin Baker was 9 years of age at the time of their deaths.

Appellant first contends that plaintiffs' complaint does not allege facts from which it could be concluded that the Maryville Road Crossing was extrahazardous, and therefore does not state a cause of action which would support a judgment in plaintiffs' favor.

Paragraphs 3 through 7 of plaintiffs' complaint state:

"That east of the tracks in question on the south side of Maryville Road, there was located within close proximity of said tracks, poles and other obstructions which interfere with the view to the south of one crossing said track as he proceeds westerly upon said Maryville Road, all of which the Defendant, its agents or employees, knew, or, by the exercise of reasonable care, should have known.

"That on said date, and for a long time prior thereto, there were no signals, flashers, lights, bells or watchmen kept at such crossing, all of which the Defendant, its agents or employees, knew, or by the reason of due care, should have known.

"That on said date, and for a long time prior thereto, said Maryville Road crossed the aforesaid railroad tracks at an acute angle, which the Defendant, its agents or employees, knew, or, by the reason of reasonable care, should have known.

"That on said date and prior thereto, said tracks were situated at an elevation considerably higher than the elevation of Maryville Road, thereby requiring automobiles crossing said tracks to approach same at a steep incline, which the defendant, its

agents or employees, knew, or by the exercise of reasonable care, should have known.

"That on said date and prior thereto, said tracks were situated in the vicinity of a residential area of said county; and that said tracks were subject to vehicular traffic by many persons in and about the vicinity of said area, and others as well, in going to and from said populated area adjacent thereto, all of which the defendant, its agents and employees, knew, or by the exercise of ordinary care, should have known; and which, coupled with the obstruction, elevation of the crossing, acute angle of the crossing, and lack of signal or warning devices, as aforealleged, made said crossing an extrahazardous one."

■ Clearly, plaintiffs' allegations contain facts from which it could be concluded that the Maryville crossing was extrahazardous.

Appellant also contends that the jury must determine that the crossing is extrahazardous before it can find that the railroad was negligent in failing to provide additional protection. Appellant did not submit a special interrogatory or instructions on this issue to the jury.

■ Whether a particular crossing is extrahazardous is a jury question. Devore v. Toledo, P. & W. Railroad, 30 Ill App2d 409, 412, 174 NE2d 883 (1961); Gibson v. Nenne, 2 Ill App2d 158, 118 NE2d 788; Maltby v. Chicago Great W. Ry. Co., 347 Ill App 441, 106 NE2d 879. However, appellant has cited no cases and we find none, which require a specific finding by the jury that a crossing is extrahazardous before the railroad can be found negligent in failing to provide protection. The jury's determination that a crossing is extrahazardous is implicit in its finding that the defendant did not act in a reasonably careful manner in failing to provide

flares, lights, bells or gates considering the condition existing at that crossing as shown by the evidence.

Appellant contends that this crossing was not extrahazardous as a matter of law and therefore no common-law duty arose to provide additional protection. The only basis for appellant to be held liable, as stated above, is if it negligently failed to provide flares, lights, bells or gates at the crossing, which would require some evidence for the jury to conclude that the crossing was extrahazardous.

■ No statute or regulation of the Illinois Commerce Commission required additional protection at this crossing. However, independent of statute or regulation, there is a common-law duty on railroads to protect crossings with adequate safety devices other than the usual crossbuck sign where special or unusual conditions cause such crossings to be "extrahazardous" and warrant additional protection. Devore v. Toledo, P. & W. Railroad, supra; Petricek v. Elgin, J. & E. Ry. Co., 21 Ill App2d 60, 157 NE2d 421; Gibson v. Nenne, supra; Maltby v. Chicago Great W. Ry. Co., 347 Ill App 441, 106 NE2d 879; Applegate v. Chicago & N. W. Ry. Co., 334 Ill App 141, 78 NE2d 793.

■ Factors which have been considered in determining whether a particular crossing is extrahazardous include physical obstructions to vision, whether movable or immovable, volume and speed of vehicular traffic, volume and speed of train traffic, the railroad facilities present at the crossing—that is, the track arrangement, the intersecting driveways and roadways, and the character of the highway and width of crossing. Hughes v. Wabash R. Co., 342 Ill App 159, 95 NE2d 735. Other physical characteristics such as the angle of the intersecting roadway, the track elevation in relation to that roadway, the character of the surrounding neighborhood and sight distance are relevant to whether a crossing is extrahazardous.

Appellant argues that there are no special conditions creating special dangers which would impose a duty to provide additional protection, noting especially the lack of a substantial obstruction and longsight distance at the crossing, arguing that the crossing was not extrahazardous as a matter of law. Appellate cites Gibson v. Nenne, supra, wherein it was stated at page 162:

"One of the questions here presented is whether there was sufficient evidence to warrant a jury in passing upon the question of negligence arising from a common-law duty. This cause does not fall in the class of cases where there is an unobstructed view nor where there has been a failure to comply with the statutory warning requirements of a failure of mechanical signals or to lower gates. Under the circumstances, if there was no extrahazardous condition existing at the crossing there would be no duty upon the railroad to operate safety devices or provide a watchman."

That court continued to state in the same paragraph:

"If there was any evidence tending to show that an extrahazardous condition existed at the crossing, it was for the jury to determine whether the railroad should have provided additional warning to travelers upon the highway. Hughes v. Wabash R. Co., 342 Ill App 159; Maltby v. Chicago Great W. Ry. Co., 347 Ill App 441."

The tracks are elevated from the level of Route 203 so that the incline on Maryville Road, 50 feet away from the track to just short of the track, is approximately eight percent. The average vehicular traffic on Maryville Road at the crossing was 2,650 vehicles per day five months prior to the accident and the estimated speed was 10–15 miles per hour. There were thirteen scheduled daily trains on the Norfolk and Western tracks, as well

as yard engines, during March, 1966. On the other two tracks, west of the Norfolk and Western tracks, there were 57 daily trains on the date of the accident. The speed limit for freight trains through this crossing is 60 miles per hour and for passenger trains is 78 miles per hour. The passenger train in question was traveling between 60 and 78 miles per hour at the time of the accident.

Deborah Baker, the surviving passenger of the automobile, testified that there is a stop sign, utility pole and telephone pole on the west side of Maryville Road between the road and northbound tracks which are obstructions when looking south from Maryville Road down the northbound track. She testified that at night in looking in the same direction from which they had come that "(t)here is an awful lot of lights. The lights from the oncoming cars, you can even see those and down further there are a lot of lights down there and a lot of buildings. When it is pretty dark out there are a lot of poles on the right side making it black down there and you can't see anything." Plaintiffs' exhibits show that a line of steel power poles, 24 feet from the east side of defendant's tracks, could obstruct vision in the southerly direction at a certain point along Maryville Road. Defendant offered testimony and other evidence that the view is unobstructed for 9,000 feet in the southerly direction and that the track is straight and level through that distance. However, an engineer pilot in civil engineering called by defendant testified on cross-examination that all of the track is not visible from all positions along Maryville Road between Route 203 and the tracks and that a northbound train would necessarily have to be in a position behind the pole at some point from any single vantage point on Maryville Road.

Harry Bane, called as a witness on behalf of the plaintiffs, testified that he was employed by the Norfolk and Western Railway Company as a public projects engi-

306

neer and that his job dealt with the installation of protective devices at crossings. The hazard factors that are to be taken into consideration in installing protective devices were physical conditions at the crossing, such as angles of the highway and track, obstructions to vision whether natural or man-made, sight distance, volume and speed of train traffic and volume and speed of vehicular traffic at the crossing.

Harry Wilcox, a research engineer for the Illinois Division of Highways testified that he was familiar with the crossing and that the visibility back toward Granite City was rather restricted due to the extreme angle of the crossing. However, that one could see all the way back if he turned considerably around to do it.

Dwight Hampson, a professional photographer testified on behalf of the defendant that he had taken some pictures of the train in question as it proceeded from Granite City toward the Maryville Road crossing; that he was notified by walkie-talkie when the train crossed Pontoon Road. He could see the headlight of the train much prior to the time it crossed Pontoon Road, but "we were concerned whether that was the right train or some train that was down there stopped." He also testified that he could see the light continuously from the time it passed Pontoon Road and some time before, "but how far his headlight was off, you can't tell."

■ From the foregoing, we believe there was sufficient evidence to furnish an evidentiary basis for the jury to find that the defendant was negligent in failing to provide additional protection at this crossing.

Defendant also contends that there is no evidence of due care on the part of any of the plaintiffs just prior to the accident, that Dixie Baker was contributorily negligent as a matter of law and that her conduct was the sole cause of the collision.

■ Initially it can be said that defendant's negligence has already been established and assuming the driver

307

was negligent, her negligence is not imputable to the other plaintiffs and would not bar their recovery if they were otherwise in the exercise of due care. Lauer v. Elgin, J. & E. Ry., 305 Ill App 200, 27 NE2d 315.

Plaintiffs must prove that each of the injured persons was in the exercise of due care for her own safety at the time of the accident. However, where direct testimony by an eyewitness is not available, due care may be inferred from testimony of careful habits of the deceased and circumstances surrounding the accident. Hughes v. Wabash R. Co., 342 Ill App 159, 95 NE2d 735; Lobravico v. Checker Taxi Co., Inc., 84 Ill App2d 20, 228 NE2d 196. This inference may also be made to show due care on the part of an accident victim suffering retrograde amnesia where there are no eyewitnesses. Campbell v. Ragel, 7 Ill App2d 301, 129 NE2d 451.

There were no eyewitnesses to this collision. Dixie Baker, the driver and Robin Baker, 9, a passenger, were killed and Deborah Baker, 14, survived, but suffered retrograde amnesia.

Plaintiffs offered testimony of Dixie Baker's good driving habits. She had driven regularly since 1950 and had been over the Maryville Road crossing at least once a week for the past five years. With reference to this crossing Debbie Baker testified, "She would come to this crossing, she was always careful. She hated the crossing. She would come to the track and she would either stop or slow down and she would look both ways."

With respect to the circumstances surrounding the collision, the most favorable to the plaintiffs, there was evidence that it was dark, that the driver's view to the left over the crossing could be obstructed, that a driver must turn his head extremely to the left to look for trains and the view was restricted because of the angle,

that Maryville Road to the tracks was on an incline of 8 percent, that there could have been confusing lights in the background, that there were four tracks to watch for trains, that there were poor shoulders at the crossing and that the impact to the car was on the left side, six feet from the rear bumper.

Defendant relies primarily on the facts that the tracks are straight and level for 9,000 feet in the direction the train was coming and that Dixie Baker was familiar with the crossing, and states that she would have had a clear and unobstructed view for one mile down the track as she drove from Route 203 to the tracks. Defendant cites many cases in which it has been held that a driver in an automobile-train collision is contributorily negligent as a matter of law where his view was unobstructed. The rationale of these cases is that a person is bound to know that a railroad crossing is a dangerous place, that he must approach the crossing with care commensurate with the known danger and that "(t)he law considers obnoxious a contention to the effect that a person looked but did not see a train when the view was not obstructed, and where if he had properly exercised his sight, he must have seen it." Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 545, 140 NE2d 370; Carrell v. New York Cent. R. Co., 384 Ill 599, 52 NE2d 201; Overman v. Illinois Cent. R. Co., 34 Ill App2d 30, 180 NE2d 213; Monken v. Baltimore & O. R. Co., 342 Ill App 1, 95 NE2d 130.

▮▮▮▮▮▮ In each of the cases cited by defendant, there was direct testimony of the conduct of the driver of the automobile so that no presumption of due care was permissible and the view of the track was unobstructed. There is a question of fact in this case as to whether or not the view of an approaching train was obstructed by the line of poles 24 feet from the tracks in conjunction with the angle of view a driver has in approaching these tracks. It must be remembered that Dixie Baker

309

was not standing outside her car looking down the tracks, but was presumably driving her car, and it is from this vantage point that the view of the grade crossing must be considered. A driver may not be at fault for failing to look and listen or see an approaching train where he is misled without his fault or the view is obstructed by objects or by darkness. Chicago & N. W. Ry. Co. v. Hansen, 166 Ill 623, 46 NE 1071; Guess v. New York Cent. R. Co., 319 Ill App 522, 49 NE2d 652. It is also significant to note that while a driver must look in both directions, he is not required to keep a continuous look-out in the direction from which the train is coming. Chicago & A. R. Co. v. Sanders, 55 Ill App 87, affd 154 Ill 531, 39 NE 481.

As Dixie Baker approached this crossing it was dark. While driving north on Route 203 she would have no view of the train approaching from the same direction, at least until she turned onto Maryville Road, 105 feet from the first track. There is no evidence of the manner in which she approached the track except that she usually stopped or slowed down and looked in both directions. Defendant argues that the only logical conclusion to be reached is that Dixie Baker did not look, or looked and did not see the train, or looked only after she could not stop in time. However, it is just as reasonable to infer that she looked and saw the train and reasonably thought it was safe to proceed. In Hughes v. Wabash R. Co., 342 Ill App 159, 95 NE2d 735, the court stated at 167: "He was not under an absolute duty to stop, but he might have driven across the track with care if it reasonably appeared he might have done so." Extraordinary care is not required, but only such care as a person of ordinary prudence and intelligence would usually exercise under the same or similar circumstances. Chicago & A. R. v. Louderback, 125 Ill App 323.

█ █ Justice Cardozo stated in Pokora v. Wabash Ry. Co., 292 US 98, at 105, 78 L Ed 1149, 54 S Ct 580:

"Illustrations such as these bear witness to the need for caution in framing standards of behavior that amount to rules of law. . . . In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of the jury."

It has always been recognized that in a case where there are no eyewitnesses, the showing of habits of due care on the part of the deceased, makes at least a prima facie case as to whether or not he was in the exercise of due care. Under the circumstances of this case, we cannot say that Dixie Baker was guilty of contributory negligence as a matter of law. The question of due care in this situation was a question for the jury. Hughes v. Wabash R. Co., supra, Karlock v. New York Cent. R. Co., 333 Ill App 655, 78 NE2d 122.

With respect to Dixie Baker's daughters, who were passengers, there was no evidence of careful habits, but there were circumstances from which it could be reasonably inferred that the girls were in the exercise of due care. Debbie, 14 years of age, was in the front and Robin, 9 years of age, was in the rear when they left home shortly before the accident. They were riding with their mother, whom they knew to be a careful driver, and with whom they had often ridden, and neither of them was of driving age.

 Our Supreme Court has recently held that the affirmative duty of a passenger to warn is that "unless the passenger sees an obvious danger which the driver might not see there would be no duty to warn him." Smith v. Bishop, 32 Ill2d 380, 205 NE2d 461; Hatcher v. New York Cent. R. Co., 17 Ill2d 587, 162 NE2d 362.

 There is no evidence of what the passengers actually saw or did, but the law requires only the highest proof of which the case is susceptible. O'Brien v.

Chicago & N. W. Ry. Co., 329 Ill App 382, 68 NE2d 638; Hughes v. Wabash R. Co., supra.

Under these circumstances, with no evidence indicating an absence of due care, the jury could reasonably infer that the girls, as minor passengers, were in the exercise of due care for their own safety. Zank v. Chicago, R. I. & P. R. Co., 17 Ill2d 473, 161 NE2d 848; Hatcher v. New York Cent. R. Co., supra; Anthony v. New York Cent. R. Co., 61 Ill App2d 466, 209 NE2d 686.

Since the plaintiffs are not guilty of contributory negligence as a matter of law, the trial court did not err in refusing to grant defendant's motion for judgment notwithstanding the verdict against each plaintiff.

Defendant urges as error that the trial court abused its discretion in denying its motion for change of venue to another county for trial. The denial of defendant's motion was proper. Plaintiffs' complaint was filed in August, 1966, and the grounds for defendant's motion existed at that time. Nevertheless, defendant did not file its motion until March 15, 1968, three days before trial. An application for change of venue must be made at the earliest practicable moment, and an application made after substantive issues have been ruled upon is not timely. Booth v. Metropolitan Sanitary Dist. of Greater Chicago, 79 Ill App2d 310, 224 NE2d 591; Hildebrand v. Hildebrand, 41 Ill2d 87, 242 NE2d 145.

Defendant also urges that evidence of traffic count on Maryville Road over the crossing in May and November of 1964 and May, 1965, and of train movements on the Gulf, Mobile & Ohio and New York Central tracks parallel to defendant's tracks on the date of the accident was irrelevant and immaterial to any issue. This evidence was relevant to the issue of defendant's negligence in that it tended to prove the extrahazardous condition of this crossing.

Defendant further urges that Instruction No. 19 was improper in that it did not require the jury to first

find that the crossing was, in fact, extrahazardous. We cannot consider this contention because defendant failed to make this specific objection in the trial court.

We have carefully considered the petition of Deborah Baker, a minor, by Robert Baker, her father and next friend, for leave to appeal from the order of the trial court allowing a new trial confined to damages in her case and we are unable to say that this action of the trial court was an abuse of discretion. Therefore, the petition of Deborah Baker, a minor, by Robert Baker, her father and next friend for leave to appeal from the order of the trial court allowing a new trial confined to damages in Deborah Baker's case is denied.

For the foregoing reasons the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.